**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| DEBRA CHAPA, §<br>Plaintiff, §<br>§<br>vs. §<br>§<br>SECURITY SERVICE FEDERAL §<br>CREDIT UNION AND BLACK AND §<br>WHITE COMPANIES I-X, §<br>Defendants. § | CIVIL ACTION NO. 5:18-cv-403<br><br>**COMPLAINT**<br>Jury Trial Demanded |

**NATURE OF ACTION**

1.       Plaintiff, Debra Chapa, brings this action against Defendants Security Service Federal Credit Union ("SSFCU"), and Black and White Companies I-X ("B&W") pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Texas Uniform Commercial Code, TEX. BUS. & COM. CODE § 9.101 *et seq.*, and the Texas Debt Collection Act ("TDCA"), TEX. FIN. CODE § 392.001 *et seq*.

**JURISDICTION, VENUE, AND STANDING**

2.       This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

3.       Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Ms. Chapa's action occurred in this district, where she resides in this district, and where Defendants transact business in this district.

4.       "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016). Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," thus "Congress may

1

'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan v. Defs of Wildlife*, 504 U.S. 555, 578 (1992).

5. "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016) (quoting 15 U.S.C. § 1692(b)). Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing. *See id.* at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied him the right to information due to him under the FDCPA."); *see also Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

6. "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is *not* a necessary condition." *Lane*, 2016 WL 3671467 at *4 (emphasis in original).

## THE FAIR DEBT COLLECTION PRACTICES ACT

7. Congress enacted the FDCPA to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)).

8. "[T]he FDCPA is a strict liability statute—collector 'need not be deliberate, reckless, or even negligent to trigger liability . . . .'" *Walker v. Pharia, LLC*, No. 4:09-CV-369-Y, 2010 WL 565654, at *3 (N.D. Tex. Feb. 18, 2010) (quoting *Ross v. RJM Acquisitions Runding LLC*, 480 F.3d 493, 495 (7th Cir. 2007)).

**THE UNIFORM COMMERICAL CODE**

9. "Article 9 of the UCC is a comprehensive statutory scheme governing the rights and relationships between secured parties, debtors, and third parties." *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 373 S.C. 43, 53, 644 S.E.2d 43, 49 (2007).

10. Article 9 serves "to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greater certainty." *Haas' Estate v. Metro–Goldwyn–Mayer, Inc.*, 617 F.2d 1136, 1140 (5th Cir. 1980).

11. After a default, the UCC gives secured parties the right to repossess collateral. *See* TEX. BUS. & COM. CODE § 9.609.

12. There is one restriction, however, which the law imposes upon this right. It must be exercised without provoking a breach of the peace; and, if a secured party finds that it cannot get possession without committing a breach of the peace, it must stay its hand, and resort to the law. *MBank El Paso, N.A. v. Sanchez*, 836 S.W.2d 151, 152 (Tex. 1992).

13. This is so because the preservation of peace, "is of more importance to society than the right of the owner of a chattel to get possession of it." *Willis v. Whittle,* 82 S.C. 500, 64 S.E. 410 (1909); *see also Singer Sewing Mach. Co. v. Phipps,* 49 Ind.App. 116, 94 N.E. 793 (1911) (quoting 3 William Blackstone, Commentaries *4) ("[T]his natural right of recaption shall never be exerted, where such exertion must occasion strife . . . or endanger the peace of society.").

**THE TEXAS DEBT COLLECTION ACT**

14. In 1973, the Texas State Legislature enacted the Texas Debt Collection Act to "control and curtail the practices used in the collection of debt" which the legislature viewed

unethical and harassing to consumers.  *See* House Comm. on Judiciary, Bill Analysis, Tex. S.B. 252, 63rd Leg., R.S. (1973).

15. Among the TDCA's requirements, any debt collector engaging in debt collection from consumers in the state of Texas must obtain a surety bond: "A third-party debt collector . . . may not engage in debt collection unless the third-party debt collector . . . has obtained a surety bond issued by a surety company authorized to do business in this state as prescribed by this section."  Tex. Fin. Code § 392.101.

16. To further this purpose and to promote transparency and fairness, the TDCA further requires that: "A copy of the bond must be filed with the secretary of state."  *Id*.

17. Like the FDCPA, the TDCA is a strict liability lawsuit which does not require proof of actual damages in order to recover statutory damages under the Act.  *See Marauder Corp. v. Beall*, 301 S.W.3d 817, 822 (Tex. App. 2009).

## PARTIES

18. Ms. Chapa is a natural person who at all relevant times resided in the State of Texas, County of Bexar, and City of San Antonio.

19. Ms. Chapa is allegedly obligated to pay a debt.

20. Ms. Chapa is a "consumer" as defined by 15 U.S.C. § 1692a(3) and TEX. FIN. CODE § 392.001(1).

21. SSFCU is a company that regularly purchases consumer paper in the form of automobile loans.

22. SSFCU is a "secured party" as defined by TEX. BUS. & COM. CODE § 9.102(a)(73).

23. SSFCU is an entity which at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "consumer debt" as defined by TEX. FIN. CODE § 392.001(2).

24. SSFCU is a "debt collector" as defined by TEX. FIN. CODE § 392.001(6).

25. B&W are persons or entities that at all relevant times were acting as repossession agents working at the behest of SSFCU.

26. Ms. Chapa is ignorant of the true names and/or capacities, whether individual, partnership, limited partnership, corporate, or otherwise, of the defendants sued herein as B&W, and therefore sues such defendants by such fictitious names until such times as their true names and/or capacities are ascertained.

27. At all relevant times, B&W were entities or persons using instrumentalities of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

28. B&W are "debt collectors" as defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

29. On or about June 24, 2015 Ms. Chapa purchased a 2013 Honda Civic (the "Vehicle").

30. Ms. Chapa purchased the Vehicle for her own personal family and household use.

31. The Vehicle constitutes "consumer goods" as defined by TEX. BUS. & COM. CODE § 9.102(a)(23).

32. Ms. Chapa could not afford to purchase the vehicle outright, so she financed the vehicle with SSFCU.

33. In connection with the transaction Ms. Chapa executed a loan agreement in SSFCU's favor.

34. As part of the agreement, SSFCU obtained a security interest in the Vehicle.

35. The Vehicle constitutes "collateral" as defined by Tex. Bus. & Com. Code § 9.102(a)(12).

36. Thereafter, Ms. Chapa made her payments under the contract to SSFCU.

37. Sometime later, Ms. Chapa developed a severe heart condition which forced her into a financial hardship which in turn caused her to fall behind in her payments.

38. Thereafter, SSFCU engaged its repossession agents, B&W to repossess Ms. Chapa's vehicle.

39. On or about February 7, 2018, at around 5:30 P.M., B&W went to Ms. Chapa's home to repossess the Vehicle.

40. When B&W arrived at Ms. Chapa's home, she noticed B&W attempting to repossess her vehicle.

41. She ran out and immediately confronted B&W's employee and protested the repossession loudly and vehemently.

42. B&W's employee harshly disregarded her protests.

43. He told her that he was going to take the vehicle anyway, and continued with the repossession.

44. B&W's repossession was intensely stressful for Ms. Chapa and exacerbated her preexisting heart condition and as a result, Ms. Chapa has suffered actual damages.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1692f(6)(A)
## B&W

45.    Ms. Chapa repeats and re-alleges each factual allegation contained above.

46.    Texas law provides that secured parties may take possession of collateral without judicial action so long as there is no "breach of the peace."  TEX. BUS. & COM. CODE § 9.609(b)(2).

47.    However if collateral cannot be repossessed without a breach of the peace, a party must get a court order to take possession of the collateral.  *Id*.

48.    A repossession agent breaches the peace if he continues with a repossession over a consumer's protest. *See Marcus v. McCollum,* 394 F.3d 813, 820 (10th Cir. 2004); *Dixon v. Ford Motor Credit Co.*, 72 Ill. App. 3d 983, 988, 391 N.E.2d 493, 497 (1979); *Hollibush v. Ford Motor Credit Co.*, 179 Wis. 2d 799, 812, 508 N.W.2d 449, 455 (Ct. App. 1993) ("We conclude that the undisputed fact is that Hollibush or her fiancé told FMCC's agent that he was not to repossess the vehicle, and that he nonetheless did so. We conclude that this constitutes a breach of the peace."); *Ford Motor Credit Co. v. Cole*, 503 S.W.2d 853, 855 (Tex. Civ. App. 1973), *dismissed* (Apr. 3, 1974) (because consumer protested repossession secured party was forced to either go to court or repossess vehicle at time when the consumer would not notice and protest); *Census Fed. Credit Union v. Wann*, 403 N.E.2d 348, 352 (Ind. Ct. App. 1980) ("[I]f [a] repossession is verbally or otherwise contested at the actual time of and in the immediate vicinity of the attempted repossession by the defaulting party or other person in control of the chattel, the secured party must desist and pursue his remedy in court."); *First & Farmers Bank of Somerset, Inc. v. Henderson*, 763 S.W.2d 137, 140 (Ky. Ct. App. 1988) ("[I]t is clear that repossession in the face of the debtor's objection constitutes a breach of the peace."); *Morris v. First Nat. Bank*

7

*& Tr. Co. of Ravenna*, 21 Ohio St. 2d 25, 30, 254 N.E.2d 683, 686 (1970); *Hopkins v. First Union Bank of Savannah*, 193 Ga. App. 109, 110, 387 S.E.2d 144, 146 (1989) (agreeing with most courts that repossession in the face of a debtor's oral protest constitutes a breach of the peace); *Martin v. Dorn Equip. Co.*, 250 Mont. 422, 427, 821 P.2d 1025, 1028 (1991) (quoting J. Sheldon & R. Sable, *Repossessions,* § 6.3 (1988)) ("[T]he general rule is that the creditor cannot . . . seize any property over the debtor's objections.").

49. Ms. Chapa loudly, and unequivocally protested B&W's repossession.

50. Once Ms. Chapa protested B&W's repossession, they lost the right to continue with the repossession.

51. Nonetheless, B&W continued with their repossession and thereby breached the peace.

52. By continuing with their repossession after it lost the right to do so, B&W violated 15 U.S.C. § 1692f(6)(A) by taking non-judicial action to effect dispossession of Ms. Chapa's property where the property was exempt by law from such dispossession.

53. B&W's repossession was intensely stressful for Ms. Chapa and exacerbated her preexisting heart condition and as a result, Ms. Chapa has suffered actual damages.

WHEREFORE, Ms. Chapa prays for relief and judgment, as follows:

a) Adjudging that B&W violated 15 U.S.C. § 1692f(6)(A);

b) Awarding Ms. Chapa statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c) Awarding Ms. Chapa actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

d) Awarding Ms. Chapa reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

e) Awarding Ms. Chapa pre-judgment and post-judgment interest as permissible by law; and

f) Awarding such other and further relief as the Court may deem proper.

## COUNT II
## VIOLATION OF TEX. BUS. & COM. CODE § 9.609(b)(2)
## SSFCU

54. Ms. Chapa repeats and re-alleges each factual allegation contained above.

55. Texas law provides that secured parties may take possession of collateral without judicial action so long as there is no "breach of the peace." TEX. BUS. & COM. CODE § 9.609(b)(2).

56. However if collateral cannot be repossessed without a breach of the peace, a party must get a court order to take possession of the collateral. *Id*.

57. A repossession agent breaches the peace if he continues with a repossession over a consumer's protest.

58. Secured creditors have a nondelegable duty not to breach the peace when they repossess secured collateral. The courts may find them liable for the acts of independent contractors who breach the peace in the course of repossessing secured collateral. *MBank El Paso, N.A. v. Sanchez*, 836 S.W.2d 151, 154 (Tex. 1992); *see also Doucette v. Belmont Sav. Bank*, No. ESCV20161596D, 2017 WL 2427566, at *2 (Mass. Super. Apr. 14, 2017); *Binion v. Fletcher Jones of Chicago, Ltd.*, 2014 IL App (1st) 131710-U, ¶ 19; *Williamson v. Fowler Toyota, Inc.*, 1998 OK 14, 956 P.2d 858; *DeMary v. Rieker*, 302 N.J. Super. 208, 695 A.2d 294 (App. Div. 1997); *Robinson v. Citicorp Nat. Servs., Inc.*, 921 S.W.2d 52, 55 (Mo. Ct. App. 1996); *Mauro v. Gen. Motors Acceptance Corp.*, 164 Misc. 2d 871, 876, 626 N.Y.S.2d 374, 377 (Sup. Ct. 1995); *Clark v. Assocs. Commercial Corp.*, 877 F. Supp. 1439, 1448 (D. Kan. 1994);

9

*Hester v. Bandy*, 627 So. 2d 833, 843 (Miss. 1993); *Sammons v. Broward Bank*, 599 So. 2d 1018, 1019 (Fla. Dist. Ct. App. 1992); *McCall v. Owens*, 820 S.W.2d 748, 752 (Tenn. Ct. App. 1991); *Massengill v. Indiana Nat'l Bank,* 550 N.E.2d 97, 99 (Ind. Ct. App.1990); *Nichols v. Metro. Bank*, 435 N.W.2d 637, 640 (Minn. Ct. App. 1989); *Gen. Fin. Corp. v. Smith*, 505 So. 2d 1045, 1047 (Ala. 1987); *Henderson v. Security Nat'l Bank,* 72 Cal. App.3d 764, 140 Cal. Rptr. 388, 390–91 (1977).

59. SSFCU's repossession agents, B&W, breached the peace by continuing their repossession in the face of Ms. Chapa's loud and unequivocal protest.

60. SSFCU violated TEX. BUS. & COM. CODE § 9.609(b)(2) when its repossession agents, B&W, breached the peace to repossess Ms. Chapa's Vehicle.

61. B&W's repossession was intensely stressful for Ms. Chapa and exacerbated her preexisting heart condition and as a result, Ms. Chapa has suffered actual damages.

WHEREFORE, Ms. Chapa prays for relief and judgment, as follows:

a) Adjudging that SSFCU violated TEX. BUS. & COM. CODE § 9.609(b)(2);

b) Awarding Ms. Chapa statutory damages, pursuant to TEX. BUS. & COM. CODE § 9.625(c)(2);

c) Awarding Ms. Chapa actual damages, pursuant to TEX. BUS. & COM. CODE § 9.625(c)(1);

d) Awarding Ms. Chapa pre-judgment and post-judgment interest as permissible by law; and

e) Awarding such other and further relief as the Court may deem proper.

## COUNT III
## VIOLATION OF TEX. FIN. CODE § 392.301(a)(8)

62. Ms. Chapa repeats and re-alleges each and every factual allegation contained above.

63. Texas law provides that secured parties may take possession of collateral without judicial action so long as there is no "breach of the peace." TEX. BUS. & COM. CODE § 9.609(b)(2).

64. However if collateral cannot be repossessed without a breach of the peace, a party must get a court order to take possession of the collateral. *Id*.

65. A repossession agent breaches the peace if he continues with a repossession over a consumer's protest. *See Marcus v. McCollum,* 394 F.3d 813, 820 (10th Cir. 2004); *Dixon v. Ford Motor Credit Co.*, 72 Ill. App. 3d 983, 988, 391 N.E.2d 493, 497 (1979); *Hollibush v. Ford Motor Credit Co.*, 179 Wis. 2d 799, 812, 508 N.W.2d 449, 455 (Ct. App. 1993) ("We conclude that the undisputed fact is that Hollibush or her fiancé told FMCC's agent that he was not to repossess the vehicle, and that he nonetheless did so. We conclude that this constitutes a breach of the peace."); *Ford Motor Credit Co. v. Cole*, 503 S.W.2d 853, 855 (Tex. Civ. App. 1973), *dismissed* (Apr. 3, 1974) (because consumer protested repossession secured party was forced to either go to court or repossess vehicle at time when the consumer would not notice and protest); *Census Fed. Credit Union v. Wann*, 403 N.E.2d 348, 352 (Ind. Ct. App. 1980) ("[I]f [a] repossession is verbally or otherwise contested at the actual time of and in the immediate vicinity of the attempted repossession by the defaulting party or other person in control of the chattel, the secured party must desist and pursue his remedy in court."); *First & Farmers Bank of Somerset, Inc. v. Henderson*, 763 S.W.2d 137, 140 (Ky. Ct. App. 1988) ("[I]t is clear that repossession in the face of the debtor's objection constitutes a breach of the peace."); *Morris v. First Nat. Bank*

*& Tr. Co. of Ravenna*, 21 Ohio St. 2d 25, 30, 254 N.E.2d 683, 686 (1970); *Hopkins v. First Union Bank of Savannah*, 193 Ga. App. 109, 110, 387 S.E.2d 144, 146 (1989) (agreeing with most courts that repossession in the face of a debtor's oral protest constitutes a breach of the peace); *Martin v. Dorn Equip. Co.*, 250 Mont. 422, 427, 821 P.2d 1025, 1028 (1991) (quoting J. Sheldon & R. Sable, *Repossessions,* § 6.3 (1988)) ("[T]he general rule is that the creditor cannot . . . seize any property over the debtor's objections.").

66. Ms. Chapa loudly, and unequivocally protested B&W's repossession.

67. Once Ms. Chapa protested B&W's repossession, they lost the right to continue with the repossession.

68. Nonetheless, B&W continued with their repossession and thereby breached the peace.

69. Secured creditors have a nondelegable duty when they repossess secured collateral. The courts may find them liable for the acts of independent contractors who breach the peace in the course of repossessing secured collateral. *MBank El Paso, N.A. v. Sanchez*, 836 S.W.2d 151, 154 (Tex. 1992); *see also Doucette v. Belmont Sav. Bank*, No. ESCV20161596D, 2017 WL 2427566, at *2 (Mass. Super. Apr. 14, 2017); *Binion v. Fletcher Jones of Chicago, Ltd.*, 2014 IL App (1st) 131710-U, ¶ 19; *Williamson v. Fowler Toyota, Inc.*, 1998 OK 14, 956 P.2d 858; *DeMary v. Rieker*, 302 N.J. Super. 208, 695 A.2d 294 (App. Div. 1997); *Robinson v. Citicorp Nat. Servs., Inc.*, 921 S.W.2d 52, 55 (Mo. Ct. App. 1996); *Mauro v. Gen. Motors Acceptance Corp.*, 164 Misc. 2d 871, 876, 626 N.Y.S.2d 374, 377 (Sup. Ct. 1995); *Clark v. Assocs. Commercial Corp.*, 877 F. Supp. 1439, 1448 (D. Kan. 1994); *Hester v. Bandy*, 627 So. 2d 833, 843 (Miss. 1993); *Sammons v. Broward Bank*, 599 So. 2d 1018, 1019 (Fla. Dist. Ct. App. 1992); *McCall v. Owens*, 820 S.W.2d 748, 752 (Tenn. Ct. App. 1991); *Massengill v.*

*Indiana Nat'l Bank,* 550 N.E.2d 97, 99 (Ind. Ct. App.1990); *Nichols v. Metro. Bank*, 435 N.W.2d 637, 640 (Minn. Ct. App. 1989); *Gen. Fin. Corp. v. Smith*, 505 So. 2d 1045, 1047 (Ala. 1987); *Henderson v. Security Nat'l Bank,* 72 Cal. App.3d 764, 140 Cal. Rptr. 388, 390–91 (1977).

70. SSFCU's repossession agents, B&W, engaged in illegal conduct by continuing their repossession in the face of Ms. Chapa's loud and unequivocal protest.

71. As the secured creditor that hired B&W, SSFCU is liable for B&W's conduct.

72. SSFCU violated TEX. FIN. CODE § 392.301(a)(8) by taking—through its agents B&W—an action prohibited by law in connection with the collection of Ms. Chapa's alleged debt.

73. B&W's repossession was intensely stressful for Ms. Chapa and exacerbated her preexisting heart condition and as a result, Ms. Chapa has suffered actual damages.

WHEREFORE, Ms. Chapa prays for relief and judgment, as follows:

a) Adjudging that SSFCU violated TEX. FIN. CODE § 392.301(a)(8);

b) Awarding Ms. Chapa injunctive relief pursuant to the TDCA;

c) Awarding Ms. Chapa actual damages pursuant to the TDCA;

d) Awarding Ms. Chapa reasonable attorneys' fees and costs incurred in this action;

e) Awarding Ms. Chapa any pre-judgment and post-judgment interest as permissible by the law; and

f) Awarding such other and further relief as the Court may deem just and proper.

**TRIAL BY JURY**

74. Ms. Chapa is entitled to and hereby demands a trial by jury.

Dated: May 3, 2018

                                                   Respectfully submitted,

                                                   <u>/s/ Russell S. Thompson IV</u>
                                                   Russell S. Thompson IV
                                                   Thompson Consumer Law Group, PLLC
                                                   5235 E. Southern Ave. D106-618
                                                   Mesa, AZ 85206
                                                   Telephone:     602-388-8898
                                                   Facsimile:      866-317-2674
                                                   rthompson@ThompsonConsumerLaw.com

                                                   Attorney for Plaintiff